# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEREK WILKS,<br>    *Plaintiff*,<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br>    *Defendants*. | :<br>:<br>:<br>:    CIVIL ACTION<br>:    NO. 18-4087<br>:<br>:<br>:<br>: |

**JONES, II   J.**                                                                                     **SEPTEMBER 6, 2019**

## MEMORANDUM

*Pro Se* Plaintiff Derek Wilks brings this action pursuant to 42 U.S.C. § 1983 against Defendant the City of Philadelphia (the "City"),[1] alleging a violation of his First, Eighth, and Fourteenth Amendment rights.  Pending before the Court is the City's Motion to Dismiss (ECF No. 17) the Amended Complaint (ECF No. 12) for failure to state a claim in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, the City's Motion to Dismiss shall be granted and this case shall be dismissed with prejudice.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are construed in the light most favorable to Plaintiff.  In 2017 Plaintiff was diagnosed with an anxiety disorder for which he was prescribed "Setraline/Zoloft." Am. Compl. 34.  These medications made him delusional, agitated, and caused compulsive behavior that led to his arrest on May 24, 2018.  Am. Compl. 34-35.  During the course of his

---

[1] Claims against Defendants Philadelphia Industrial Correction Center and its staff, including Jane Does and John Does, Mental Health Management Inc. and its staff, including Jane Does and John Does, and Corizon Medical Service and its staff, including Jane Does and John Does were dismissed with prejudice.  (*See* ECF No. 28).

arrest, Plaintiff sustained an injury to his left arm and shoulder due to the aggressive actions of the arresting officer. Am. Compl. at 14, 15[2] (ECF No. 12). A subsequent examination of his injuries at the "Rothman Institute" showed that he had a torn rotator cuff and severed ligaments and tendons that would need to be reattached. Am. Compl. at 15. A doctor at the Rothman Institute issued an order to "Corsion [hereinafter "Corizon"] Medical Service at P.I.C.C. County Jail" to schedule an operation to fix these injuries. From the date of his arrest until October 17, 2018 when he was transferred from "P.I.C.C. County Jail" to S.C.I. Phoenix, Plaintiff did not receive surgery and was only treated with medication. He filed several sick call slips regarding his pain, requesting an MRI and surgery. Am. Compl. at 18, 27. However, he was only given medications, including Motrin, Muscle Rub, and Ibuprofen which did nothing to alleviate his pain. Am. Compl. at 18, 27.

Moreover, Plaintiff's physical injuries compounded his diagnosed anxiety disorder and post-traumatic stress disorder that was diagnosed by Mental Health Management, Inc. ("M.H.M.I") in June 2018. Am. Compl. at 35. Plaintiff received "Prozac and Minipress" to manage these conditions. Am. Compl. at 35. He filed sick call slips requesting counseling and to speak with a doctor on several occasions, but received no reply from a doctor, was told M.H.M.I. does not do counseling, and only received changes to his prescription dosages. Am. Compl. at 19, 30, 35-36, 39.

Plaintiff claims that the actions of Corizon, M.H.M.I., and P.I.C.C. amounted to deliberate indifference because of: (1) the inordinate amount of time that passed without him receiving surgery, (2) their failure to provide treatment that reduced his physical pain and mental

---

[2] The Court will use the ECF pagination unless otherwise noted.

distress, and (3) his transfer to another institution, which would require him to start the process of obtaining treatment all over.  Am. Compl. at 19-20, 36.  Plaintiff claims all of these symptoms were exacerbated by being confined to his cell for periods of 24-46 hours without exercise, recreation, therapy, time in the library, a shower, or access to religious activities.  Am. Compl. at 37, 38, 51, 56, 58, 72, 76.

Plaintiff claims he was also subjected to assaults and other unconstitutional conditions of confinement while housed at P.I.C.C.  A breach in security led to an occasion where, while returning to his general population cell, a protective custody inmate spit in his hair and face, thereby violating the Philadelphia Department of Prisons Inmate Handbook.  Am. Compl. at 51, 57.  According to Plaintiff, protective custody cells are located on the same floor as general population cells in P.I.C.C., which is against policy.  Am. Compl. at 47.  Indeed, protective custody and general population inmates often "cross[ed] paths," in violation of the Philadelphia Prison's Policies and Procedures.  Am. Compl. at 48.  This unsanctioned conduct occurred during recreation time and when general population inmates served food and cleaned on the protective custody unit.  Am. Compl. at 49.

Plaintiff claims that the "Warden, Shift Commanders, [and] Subordinate Staff" operated P.I.C.C. "with a no care/deliberate indifference by breaking rules, policies, and plaintiff's constitutional rights."  Am. Compl. at 47.  He claims this behavior led to "verbal attacks, assaults" and a "masing" incident by C/O Bruce.  Am. Comp. at 49-50.  He also claims that P.I.C.C. was routinely understaffed, which led to unequal recreation time for the protective custody and general population inmates.  Am. Compl. at 47-49.  The understaffing also caused Plaintiff to miss attending weekly worship services.  Am. Compl. at 72-73, 75.

Finally, Plaintiff claims there were unsanitary food and living conditions at P.I.C.C. Am. Compl. at 67, 68. The food he received was often cold, over cooked, and contaminated due to being served uncovered. Am. Compl. at 67. He also claims that the block officers allowed the condiments for his food to be stolen, which was evident, as an example, by him being entitled to four sugar packets but only receiving two on certain occasions. Am. Compl. at 67. As to the conditions in his cell block, Plaintiff had to sleep on torn mattresses and sheets, take cold showers, and circumnavigate stagnant water left on the floor from leaky pipes and roof. Am. Compl. at 68.

Plaintiff sought relief for these actions by filing his Complaint on September 21, 2018. (ECF No. 2). At the same time, Plaintiff also filed an application to proceed *in forma pauperis* ("IFP"). (ECF No. 1). The Court granted Plaintiff IFP status, deemed the Complaint filed, and dismissed his claims against the Philadelphia Department of Prisons and Philadelphia Industrial Correction Center ("P.I.C.C.") with prejudice as legally baseless pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because neither entity is subject to suit. September 27th Order at ¶¶ 5-6 (ECF No. 5). The Court construed Plaintiff's claims against both entities as being against the City. (ECF No. 5). September 27th Order at ¶¶ 5-6. On November 2, 2018, Plaintiff sought leave to amend the Complaint to add Corizon and M.H.M.I. as Defendants. First Mot. Leave at 2. The Court denied Plaintiff's Motion for Leave to File an Amended Compliant without prejudice because he failed to state a claim against Corizon or M.H.M.I. November 26th Order at 2. On November 30, 2018, Plaintiff then filed an Amended Complaint without leave. (ECF No. 12). The Court originally struck the amendment, (*see* ECF No. 14), and later deemed it filed after Plaintiff filed a Second Motion for Leave to File an Amended Complaint. (ECF No. 17). In the Amended Complaint Plaintiff reasserted claims P.I.C.C. and its staff, Corizon and its staff, and

M.H.M.I. and its staff that the court dismissed with prejudice as legally baseless pursuant to § 1915(e)(2)(B)(i) due to P.I.C.C. not being amenable to suit and Plaintiff's failure to plausibly plead the elements of municipal liability as to Corizon and M.H.M.I. June 26th Order at 1-2 (ECF No. 28).

Thus, pending before the Court is the Motion to Dismiss the Amended Complaint by the only remaining defendant, the City. (ECF No. 18). Plaintiff filed an Opposition to the Motion to Dismiss (ECF No. 18) and this matter is now fully briefed and ripe for adjudication.

II. STANDARD OF REVIEW

Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). This inquiry requires courts to separate factual allegations from legal conclusions and determine whether the well-pled facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234-35).

## III. DISCUSSION

Section 1983 is not a source of substantive rights, thus for Plaintiff to state a claim pursuant to this section he must plausibly allege a deprivation of a right secured by federal law by a person acting under color of state law. *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Plaintiff alleges that while housed at P.I.C.C. he was denied his right to exercise his religion and subjected to cruel and unusual punishment in violation of the First, Eighth and Fourteenth Amendments. Plaintiff has not set forth any express violations of the Fourteenth Amendment, therefore the Court will address his Eighth Amendment claims under both the Eighth and Fourteenth Amendments due to the uncertainty of Plaintiff's custody status while at P.I.C.C.

As the City is the only remaining defendant, to survive the Motion to Dismiss Plaintiff also had to plead the elements of municipal liability set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipalities such as the City may only be held liable for the torts of its employees under § 1983 if the employee: (1) "acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity"; (2) "has individual policy making authority rendering his or her behavior an act of official government policy"; or (3) acted in an unconstitutional manner and "an official with authority has ratified the unconstitutional actions . . . rendering such behavior official for liability purposes." *McGreevy v. Stroup*, 413 F.3d 359, 368 (3d Cir. 2005). With respect to identified policies and procedures, where a prison regulation impinges upon an inmate's constitutional rights, the alleged violation is redressable where the regulation was not reasonably related to a legitimate penological interest. *Turner v. Safely*, 482 U.S. 78, 89 (1987). Courts must make this evlauation in light of a

prison's central objective of safeguarding institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

After a liberal construction of the Amended Complaint, the Court holds that Plaintiff has failed to plausibly state a claim against the City by failing to plead a constitutional violation or *Monell* liability. As Plaintiff has already had an opportunity to amend the Complaint, the Court will grant the City's motion and dismiss the Amended Complaint with prejudice.

### A. First Amendment

Inmates have a First Amendment right to practice their religion while incarcerated. *Bell*, 441 U.S. at 544. Plaintiff claims the he was prevented from doing so on several occasions due to understaffing, excessive time in his cell, and the manner in which church services were announced. However, Plaintiff's claims are without merit as he has failed to plead *Monell* liability or an actual constitutional violation. As to *Monell*, Plaintiff fails to allege with any specificity the alleged offending policy relevant to staffing, church attendance, or announcement of religious services. Indeed, Plaintiff concedes that other inmates attended church services, and thus cannot reasonably be alleging that a policy existed preventing church attendance. Moreover, Plaintiff has failed to plead with any specificity an offending custom or practice. He simply alleged that certain prison staff made church announcements "in a different way" that ultimately prevented his ability to attend services. Am. Compl. at 72-73. Plaintiff's failure to identify a specific individual is fatal to his claim. But even if the Court were to ignore this point, Plaintiff has not pled how or when this alleged unconstitutional behavior was brought to the attention of someone in a supervisory capacity. Plaintiff's allegations are thus completely

lacking in the factual specificity that could reasonably support a claim that Plaintiff's treatment resulted from a policy, practice, or custom of the City.

Nonetheless, to the extent the Court were to assume, for purposes of this motion only, that Plaintiff could plausibly plead *Monell* liability, and thus permit him leave to amend, doing so is futile as Plaintiff still fails to allege a constitutional violation despite already amending his complaint. Plaintiff has not alleged that he was barred from practicing his religion, but rather that he was dissatisfied with the frequency of his church attendance, which does not state a cognizable First Amendment claim. *See Adegbuji v. Green*, 280 Fed. App'x 144 (3d Cir. 2008).

### B. <u>Eighth Amendment</u>

The Eighth Amendment entitles convicted inmates to be free from cruel and unusual punishment. *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (internal quotation omitted). In application, the Eighth Amendment: "imposes a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners," *Leavy*, 117 F.3d at 747, be free from excessive force by prison officials, *Passmore v. Ianello*, 528 Fed. Appx. 144, 147 (3d Cir. 2013), prohibits conditions of confinement that deny "the minimal civilized measures of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and proscribes "deliberate indifference to serious medical needs."

Plaintiff has claimed that: (1) an inmate spit on him, Am. Compl. at 51, (2) a prison guard used "mase [or pepper spray]," on him and verbally assaulted him, Am. Compl. at 49-50, (3) he often had to eat cold and overcooked food without his allotted condiments, Am. Compl. at 67, (3) he was forced to sleep on torn bedding and navigate around stagnant water on the floor, Am. Compl. at 68, (4) he, as a general population inmate, was given less recreation and law library time than protective custody inmates, Am. Compl. at 51, and (5) an injury he sustained during

his arrest was not treated appropriately, which led to severe and undue physical pain and mental distress. Am. Compl. at 14-17, 19-20, 34-36. Plaintiff claims that these violations resulted from the Warden and prison staff's failure to follow the Philadelphia Prison's Policies and Procedures regarding housing protective custody and general population, poor training, and a culture of deliberate indifference Am. Compl. at 17-20, 26-27, 47-50, 67-68.

Turning first to Plaintiff's assault claims. With respect to the alleged verbal harassment and spitting incident, the Court will construe those allegations as an Eighth Amendment failure to protect claim. Although by no means condoned, verbal abuse does not violate the Eighth Amendment. *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012). As to the spitting incident, Plaintiff has not plausibly pled that a protective custody inmate is more or less likely than a general population inmate to behave in this manner, and thus there is no factual basis from which the Court may reasonably infer that the Warden and/or prison staff were deliberately indifferent to such a risk. Moreover, though concededly untoward and undesired behavior, Plaintiff has not plausibly pled how this incident seriously harmed him. The Court need not address whether Plaintiff plausibly pled *Monell* liability because neither incident raises a constitutional claim. However, even if the Court were to assume Plaintiff could plead a constitutional violation if given leave to amend, Plaintiff has cited no policy, custom or failure in training that would attribute the alleged actions to the City under *Monell*.

Turning next to the alleged pepper spray incident, the Court will construe these allegations as an excessive force claim. When considering such a claim, the Court must consider whether the force was applied in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically" to cause harm. *Passmore*, 528 Fed. Appx. at 147. To make this determination, the Court must consider: "(1) the need for the application of force; (2) the

relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of a forceful response. *Id*. Plaintiff's sole allegation that he was "mas[ed]" fails to demonstrate an entitlement to relief as it provides no other factual allegations from which the Court could reasonably infer that C/O Bruce acted maliciously and sadistically to cause him harm. Moreover, as C/O Bruce was never named as a Defendant in this action and Plaintiff has cited no policy, custom or failure in training regarding the use of pepper spray or force, there are no plausibly pled facts that these alleged actions should be attributed to the City under *Monell*.

As to his conditions of confinement claim, Plaintiff must "establish both an objective element—that the deprivation was sufficiently serious—and a subjective element—that a prison official acted with a sufficiently culpable state of mind, i.e. deliberate indifference." *Thomas v. SCI-Graterford*, No. 11-6799, 2014 WL550555 at *4 (E.D. Pa. Feb. 12, 2014) (internal citations omitted). In determining whether the conduct alleged objectively comports with "evolving standards of decency," *see Rhodes*, 452 U.S. at 347, the Court must "consider the totality of the circumstances of his confinement," including "the length of time [he was] exposed to the conditions at issue." (*Id.*). Plaintiff is entitled to "humane conditions of confinement," which include receiving "adequate food, clothing, shelter and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, Plaintiff's concerns with his bedding, food, showers, and stagnant water over a six-month period do not rise to the level of inhumane. *See e.g., Liles v. Camden County Dept. of Corrections*, 225 F.Supp.2d 450, 459 (3d Cir. 2002). The Court is sympathetic to Plaintiff's discomfort with his living conditions, but it must not impose its "own notions of enlightened policy" by setting a standard for prison conditions that exceed those of

many non-incarcerated individuals. *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (Stewart, J., concurring). Plaintiff's inability to plead a constitutional violation, alleviates any need to address whether he has pled *Monell* liability. However, even assuming Plaintiff could plead a constitutional violation with an opportunity to amend, he has failed to identify any specific policy that was violated or allege with anything more than unsupported conclusory allegations that there was a custom or culture that permitted the alleged constitutional violation.

Finally, as to Plaintiff's allegations regarding his denial of medical care, to state a claim Plaintiff must demonstrate the City's "deliberate indifference to [his] serious medical needs." *Turner v. Attorney General Pennsylvania*, 505 Fed. Appx. 95, 100 (3d Cir. 2012) (internal quotation omitted). A medical need is sufficiently serious if it is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity of a doctor's attention." *Casilla v. New Jersey State Prison*, 381 Fed. Appx. 234, 236 (3d Cir. 2010) (internal quotation omitted). Plausibly pleading deliberate indifference to such a need requires a showing of more than "simple negligence or lack of due care." *Turner,* 505 Fed. Appx. at 100. It can be shown by "a prison official intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Casilla*, 381 Fed. Appx. at 236. "Absent a reason to believe (or actual knowledge) that prison doctors or their assistant are mistreating (or not treating) a prisoner, a non-medical prison official [] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id*. (quoting *Spruill v. Gillis*, 372 F.2d 218, 236 (3d Cir. 2004).

Assuming Plaintiff was diagnosed with a rotator cuff injury and torn tendons, and that surgery was indicated or ordered, a liberal construction of Plaintiff's allegations does not demonstrate that his inability to obtain a surgery or to receive his preferred treatment for his

mental maladies rises to the level of deliberate indifference. *See Casilla*, 381 Fed. Appx. at 236 (plaintiff's "mere disagreement as to the proper medical treatment" did not state an Eighth Amendment claim where he received medical treatment but there was a one-year delay in him receiving knee surgery). Plaintiff has not plausibly pled that the desired surgery was emergent or that it had to be obtained by a certain time, or other facts from which the Court could reasonably infer that the five to six-month delay in him receiving surgery amounted to deliberate indifference. Plaintiff has not plausibly plead that his need for surgery was so obvious that any lay person would have recognized this need. And Plaintiff has not identified any prison official that intentionally delayed or interfered with his obtaining treatment. Plaintiff did allege that he was transferred from P.I.C.C. to S.C.I. Phoenix, but there was nothing in his allegations from which the Court could reasonably infer that this transfer was the result of anything more than administrative need. As Plaintiff did receive treatment on his arm and shoulder including examinations and medication, Plaintiff has not plausibly pled deliberate indifference to his alleged need for surgery.

As to treatment for Plaintiff's anxiety and PTSD, again assuming the truth of these allegations and that his alleged diagnoses amounted to serious medical needs, Plaintiff has nonetheless failed to plead deliberate indifference. A liberal construction of Plaintiff's claims in a light most favorable to him at best demonstrates his preference for receiving counseling in addition to the medication he received. These allegations are not sufficient to meet the "stringent standard" of deliberate indifference. *Mattern v. City of Sea Isle*, 657 Fed. Appx. 134, 140 (3d Cir. 2016).

In sum, and at best, Plaintiff has set forth allegations regarding his shoulder injury, anxiety, and PTSD that could conceivably evidence simple negligence or lack of due care, but

Eighth Amendment liability does not attach to those claims. *Turner,* 505 Fed. Appx. at 100. As Plaintiff has failed to plead a constitutional violation, the Court need not address whether he has pled *Monell* liability. However, even assuming Plaintiff could plead a constitutional violation, he has failed to identify any specific policy that was violated or allege with anything more than unsupported conclusory allegations that there was a custom or culture that caused his alleged denial of medical care.

### C. Fourteenth Amendment

The Court is unclear as to whether Plaintiff's incarceration at P.I.C.C. resulted from a conviction or his status as a pretrial detainee. Consequently, the Court will also construe the Amended Complaint as setting forth claims under the Fourteenth Amendment for Plaintiff's alleged subjection to conditions of confinement amounting to punishment prior to the adjudication of guilt. *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005). A condition of confinement claim and denial of medical care claim under the Fourteenth Amendment have the same subjective and objective components as an Eighth Amendment claim. *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993); *Mattern*, 657 Fed. Appx. at 139. Similarly, as a pretrial detainee is entitled to "no less protection for personal security than that afforded to convicted prisoners," *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d. Cir. 1988), a failure to protect and excessive force claim proceeds under the same analysis as an Eighth Amendment claim. Consequently, for the reasons set forth above, Plaintiff has not sufficiently pled a Fourteenth Amendment failure to protect, excessive force, conditions of confinement, or denial of medical care claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the City's motion and dismiss the Amended Complaint with prejudice. Plaintiff has already amended his complaint and sought leave to amend, which the Court denied (*see* ECF No. 28), therefore giving him another opportunity to amend would be futile. *See Berkery v. Wissahickon School Dist. Bd. Of Directors*, 628 Fed. Appx. 109, 112 (3d Cir. 2015). An appropriate Order follows.

BY THE COURT:


*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II    J.